IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Swyers                          :
                                       :
            v.                         :     No. 292 C.D. 2018
                                       :     Submitted: June 22, 2018
Commonwealth of Pennsylvania,          :
Department of Transportation,          :
Bureau of Driver Licensing,            :
                 Appellant             :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: September 10, 2018

        The Department of Transportation, Bureau of Driver Licensing
(Department), appeals an order of the Court of Common Pleas of the 17th Judicial
District (Snyder County Branch) (trial court) that sustained the appeal of Angela
Swyers (Licensee) from a one-year suspension of her operating privilege for refusing
to submit to chemical testing pursuant to Section 1547(b)(1) of the Vehicle Code,
75 Pa. C.S. §1547(b)(l).[1]  Because the arresting officer had reasonable grounds to
believe Licensee had been operating her vehicle under the influence of alcohol, we
reverse the trial court.

        On June 27, 2017, Licensee was arrested for suspicion of driving under
the influence of alcohol.  On July 19, 2017, the Department notified Licensee that

---

[1] Section 1547 of the Vehicle Code is commonly referred to as the Implied Consent Law.  The
Implied Consent Law authorizes suspension of the driving privilege of a licensee where the
licensee is placed under arrest for driving under the influence and refuses to consent to chemical
testing. *See Thoman v. Department of Transportation, Bureau of Driver Licensing*, 965 A.2d 385,
386 n.1 (Pa. Cmwlth. 2009).

her operating privilege would be suspended for one year as a result of her refusal to submit to chemical testing at the time of her arrest. Licensee appealed.

At the February 5, 2018, hearing, the Department presented the testimony of Pennsylvania State Police Trooper Rodney Shoeman. Trooper Shoeman testified that while on patrol on June 27, 2017, at approximately 3:54 a.m., he observed Licensee's vehicle "traveling on State Route 522 and … cross into the oncoming lane." Notes of Testimony, 2/5/2018, at 9 (N.T. __); Reproduced Record at 24a (R.R. __). He testified that the wheel on the driver's side crossed over the center line three times.

Trooper Shoeman testified that he stopped the vehicle, which was being driven by Licensee. As he approached the vehicle, Trooper Shoeman observed a strong odor of alcohol coming from inside the vehicle. Licensee told him that "she was a nurse coming from a patient's residence." N.T. 10; R.R. 25a. Trooper Shoeman also observed "open cases of beer" in the rear of the vehicle and "two open containers of beer" in the front center console. N.T. 14; R.R. 29a. Trooper Shoeman testified that when he asked Licensee about the open cans of beer, Licensee said that "she had given her daughter a ride and her daughter was drinking those." N.T. 15; R.R. 30a.

At Trooper Shoeman's request, Licensee exited her vehicle. Trooper Shoeman observed that Licensee had bloodshot eyes and a strong odor of alcohol emanating from her person. Trooper Shoeman administered three field sobriety tests, all of which Licensee failed. Licensee refused to submit to a preliminary breath test. Based on all of his observations, including the failed field sobriety tests, Trooper Shoeman arrested licensee on suspicion of driving under the influence.

2

At the police barracks, Trooper Shoeman read Licensee the implied consent warnings (Form DL-26), which informed Licensee that her driver's license would be suspended for at least 12 months if she did not submit to a blood test. Licensee refused. Trooper Shoeman read the warnings to Licensee a second time, and she again refused. Trooper Shoeman explained that after he read Licensee her *Miranda*[2] warnings, Licensee admitted she had "consumed three Yuengling Lagers [right before leaving] her daughter's residence." N.T. 29; R.R. 44a.

On cross-examination, Trooper Shoeman acknowledged that when he initiated the traffic stop, Licensee operated her vehicle "at a safe speed and pulled into the parking lot off the road appropriately[.]" N.T. 38; R.R. 53a. Trooper Shoeman also acknowledged that Licensee did not have slurred speech and followed his commands to provide identification. Licensee did not testify.

The trial court sustained Licensee's appeal. The trial court found Trooper Shoeman's testimony "extremely credible," and "that [Licensee] was arrested, was transported to the barracks, was read the [Form DL-26 and] refused to submit to the [blood] test." N.T. 61; R.R. 76a. The trial court concluded, however, that "[b]ased on the testimony provided … the Commonwealth [did not meet] its burden as far as the reasonable suspicion." N.T. 64; R.R. 79a. The trial court explained its decision as follows:

> The [trial court] is persuaded that the testimony was that the odor of alcohol was coming from [Licensee] not the cans of beer. The odor of alcohol alone does not indicate intoxication, especially if one had just been drinking the beer.
>
> ***

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[Licensee] provided an expired insurance card [and] her driver's license. There was no testimony that she had to be asked repeatedly. There was no testimony regarding motor skill impairment while she was retrieving these. I mean, you're stopped at four o'clock in the morning on a highway by a state trooper, you're nervous.

\*\*\*

The field sobriety test, there's testimony regarding four sobriety tests.… She refused the preliminary breath test, that doesn't factor in.

\*\*\*

[Licensee] had bloodshot eyes. Well, yes, that's a factor of intoxication, it doesn't necessarily mean it's intoxication. There could be a lot of reasons at four o'clock in the morning one would have bloodshot eyes.

\*\*\*

[Licensee] made the statements that she had [three] beers. … I don't know if they were full cans, partial cans, whether she just took a sip from that or not.

N.T. 62-65; R.R. 77a-80a. For these reasons, the trial court sustained Licensee's appeal. The Department now appeals.[3]

On appeal, the Department argues that the trial court erred in sustaining Licensee's appeal after it found Trooper Shoeman's testimony "extremely credible" but then concluded the officer lacked reasonable grounds to believe Licensee had been operating her vehicle while under the influence. The Department asserts that its evidence showed sufficient indicia of intoxication to support the license suspension. Licensee responds that the Department did not meet its burden of proof

---

[3] Our review determines whether the trial court's findings are supported by competent evidence, whether errors of law have been committed or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Finnegan v. Department of Transportation, Bureau of Driver Licensing*, 844 A.2d 645, 647 n.3 (Pa. Cmwlth. 2004).

because it offered no evidence that she was driving erratically, speeding, had caused an accident, or committed any motor vehicle code violation. Licensee also emphasizes that her speech was not slurred, her clothes were not disheveled, and she was able to follow the officer's instructions.

To establish that a suspension of operating privileges was proper under Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. §1547(b)(l)(i), the Department must prove at a statutory appeal hearing that the licensee:

> (1) was arrested for driving while under the influence by a police officer *who had reasonable grounds to believe that the licensee was operating* . . . the *vehicle while under* [*the*] *influence of alcohol*; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that a refusal would result in a license suspension.

*Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999) (emphasis added). In the case *sub judice*, the first prong is the only one at issue.

"The standard of reasonable grounds to support a license suspension does not rise to the level of probable cause required for a criminal prosecution." *Id.* at 1207. "Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Id.* Whether reasonable grounds exist is a question of law reviewable by this Court on a case-by-case basis. *Id.* In determining whether the officer had reasonable grounds, a court must examine the totality of the evidence. *Marone v. Department of Transportation, Bureau of Driver Licensing,* 990 A.2d 1187, 1190 (Pa. Cmwlth. 2010). "Once the trial court accepts as credible an officer's testimony regarding observations of the licensee, it cannot substitute its judgment as

to what inferences should be drawn from the circumstances." *Schlag v. Department of Transportation, Bureau of Driver Licensing*, 963 A.2d 598, 603 (Pa. Cmwlth. 2009). *See also Helt v. Department of Transportation, Bureau of Driver Licensing*, 856 A.2d 263, 266 (Pa. Cmwlth. 2004) (holding that trial court "erred in substituting its judgment as to what inference should be drawn from the circumstances the officer observed; the test is whether the officer's conclusion was reasonable as a matter of law, not whether common pleas might have concluded otherwise had he stood in the officer's shoes").

Here, the trial court credited Trooper Shoeman's testimony regarding his observations on the night of Licensee's arrest. Thus, the trial court had to evaluate the totality of the circumstances described by Trooper Shoeman to determine whether, as a matter of law, a person in his position could have reasonably concluded that Licensee had operated her vehicle while under the influence of alcohol. Instead, the trial court evaluated each of Trooper Shoeman's observations in isolation and substituted its judgment as to what inference should have been drawn from each circumstance. For example, the trial court concluded that the "odor of alcohol *alone* does not indicate intoxication," and that bloodshot eyes, while "a factor of intoxication . . . doesn't necessarily mean it's intoxication." N.T. 62, 63; R.R. 77a, 78a (emphasis added). The trial court cannot replace Trooper Shoeman's inferences with its own inferences after it has credited Trooper Shoeman.

Licensee directs this Court to two cases: *Commonwealth v. Gleason*, 785 A.2d 983 (Pa. 2001), and *Commonwealth v. Whitmyer*, 668 A.2d 1113 (Pa. 1995). Licensee's reliance on these cases is misplaced. *Gleason* and *Whitmyer* were decided under the former version of Section 6308(b) of the Vehicle Code, which was interpreted as requiring the arresting officer to have probable cause to believe the

6

vehicle or its driver was in violation of the Vehicle Code. *See* former 75 Pa. C.S. §6308(b) (as amended by the Act of September 30, 2003, P.L. 120, effective February 1, 2004); *Commonwealth v. Holmes*, 14 A.3d 89, 94 n.12 (Pa. 2011) (explaining that the prior version of Section 6308(b) required an officer to have "articulable and reasonable grounds" which courts interpreted as meaning probable cause, whereas the current version of Section 6308(b) expressly requires only "reasonable grounds").

We agree with the Department that it satisfied its burden of proof through Trooper Shoeman's credited testimony. Trooper Shoeman testified that Licensee drove her vehicle across the center line of the road three times; had bloodshot eyes and emitted a strong odor of alcohol; had open cans of beer in her vehicle; failed three field sobriety tests; and refused to submit to a preliminary breath test. Considering the totality of the circumstances described by Trooper Shoeman, we hold that he had reasonable grounds to believe that Licensee operated her motor vehicle while under the influence of alcohol. Our holding is in line with precedent. *See, e.g., Walkden v. Department of Transportation, Bureau of Driver Licensing*, 103 A.3d 432, 437-38 (Pa. Cmwlth. 2014) (reasonable grounds existed where officer observed an odor of alcohol coming from licensee's vehicle, an open container of alcohol in the vehicle, and licensee failed field sobriety tests); *Sisinni v. Department of Transportation, Bureau of Driver Licensing*, 31 A.3d 1254, 1258 (Pa. Cmwlth. 2011) (slight odor of alcohol, glassy eyes, and an admission from the vehicle operator that he consumed two alcoholic beverages was reasonable grounds to require a chemical test); and *Cole v. Department of Transportation, Bureau of Driver Licensing*, 909 A.2d 900, 904-05 (Pa. Cmwlth. 2006) (glassy eyes, odor of alcohol,

7

an admission of drinking, and failure of field sobriety tests was sufficient to establish reasonable grounds of a licensee's intoxication).

Finally, we reject Licensee's argument that the absence of other traditional indicia of intoxication somehow weighs in her favor.[4] As noted above, the issue of reasonable grounds is decided on a case-by-case basis. There is no checklist or set of behaviors that a licensee must exhibit for there to be reasonable grounds. *Stancavage v. Department of Transportation, Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009). Furthermore, while courts have identified several factors that constitute reasonable grounds (*e.g.*, slurred speech, uncooperative behavior, being unsteady on one's feet, or emitting an odor of alcohol), the absence of any one factor does not mean that the arresting officer lacks reasonable grounds. *Farnack v. Department of Transportation, Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011). Thus, while Licensee may be correct that she did not exhibit slurred speech, stagger, or drive erratically, Trooper Shoeman still had ample reasonable grounds, as discussed above, to believe that she had operated her vehicle under the influence of alcohol. *See also, e.g., Koutsouroubas v. Department of Transportation, Bureau of Driver Licensing*, 61 A.3d 349, 353 (Pa. Cmwlth. 2013) ("[N]o requirement exists that a lack of motor skills be exhibited in order to formulate reasonable grounds."); *Sisinni*, 31 A.3d at 1257 ("[It is] not necessary for a motorist to fail a field sobriety test in order for a police officer to have reasonable grounds to request a motorist to submit to a chemical test.").

---

[4] Additionally, in her brief, Licensee states that there was no legal basis for Trooper Shoeman's traffic stop. This Court has stated that the reasons for the initial stop are irrelevant; "[a]n illegal arrest is not an impediment to a license suspension for refusing a chemical blood test." *Kachurak v. Department of Transportation, Bureau of Driver Licensing*, 913 A.2d 982, 986 (Pa. Cmwlth. 2006); *see also Department of Transportation v. Wysocki*, 535 A.2d 77, 79 (Pa. 1987).

For all of these reasons, the trial court's order is reversed.

_____
MARY HANNAH LEAVITT, President Judge

Senior Judge Colins dissents.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Swyers                          :
                                       :
            v.                         :     No. 292 C.D. 2018
                                       :
Commonwealth of Pennsylvania,          :
Department of Transportation,          :
Bureau of Driver Licensing,            :
            Appellant                  :

# **O R D E R**

AND NOW, this 10th day of September, 2018, the order of the Court of Common Pleas of the 17th Judicial District (Snyder County Branch) dated February 5, 2018, in the above-captioned matter is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge